UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JAMES E. M. PEEL, SR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 07-CV-0072-CVE-PJC |
| ) | |
| **DEPUTY OFFICER TURNER** ) | |
| **and CAPTAIN DEVOE,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court is Defendant Detention Officer Turner's Motion for Summary Judgment (Dkt. # 38). Plaintiff James E. M. Peel, Sr. ("Peel") appears pro se. His response to Detention Officer Turner's ("Turner") summary judgment motion was due on December 2, 2007, but plaintiff has not responded to the motion. For the reasons set forth below, the Court finds that defendant's motion for summary judgment should be **granted**.

**I.**

Plaintiff Peel was arrested on November 11, 2006 and booked into the David L. Moss Criminal Justice Center ("jail"). Dkt. # 38, at 2. During his stay,[1] Peel claims the jail's conditions of confinement violated his Eighth Amendment right to be from cruel and unusual punishment. See Dkt. # 1-1, at 2. In September 2006, the jail implemented a pilot program modeled after other prison programs in an effort to reduce or eliminate several ongoing problems. Dkt. # 38, at 2. Peel was incarcerated on three separate occasions after implementation of this test program. Id. at 3. The program allowed inmates to enter or exit their cells twice every hour throughout the day, except

---

[1]   Peel is no longer incarcerated at the jail.

during regular "lockdown" from 11 p.m. to 7 a.m., head counts, disciplinary detentions, and meal cleanups. Id. at 3-4. During each of these half-hour periods, each inmate had the option of remaining in his cell, which would be manually closed and locked, or entering the day room area and being locked out of his cell. Id. at 4. If an inmate chose to remain in his cell, he would have access to a sink with running water, a toilet, two beds, a desk, a chair, an extra set of jail issued clothing, one hygiene kit, one wash cloth, toilet paper, one blanket, and a sheet. Id. at 4, 7. In essence, every 25 minutes, an inmate had 5 minutes to exit or enter his cell for any legitimate reason — including to retrieve an item or to use the toilet. Id. at 4.

On November 27, 2006, defendant Turner was assigned to oversee Peel's "pod," which is a housing unit that maintains 80-94 inmates. Id. at 3-4. At approximately 8:30 a.m., Turner made her first head count. Id. Upon completion of the head count at approximately 9:00 a.m., she unlocked the doors to all the cells via computer. Id. Peel went to the day room area and was locked out of his cell. Id. at 6. At 9:25 a.m., Turner unlocked all of the cells for five minutes. Id. Peel chose not to access his cell. Id. At 9:55 a.m., Turner again unlocked all of the cells for five minutes. Id. Peel again chose not to access his cell. Id.

Sometime around 10:10 a.m., Peel claims that he asked Turner repeatedly to unlock his cell because he had to use the bathroom. Dkt. # 38-9, at 1. Peel claims that Turner refused to open his cell. Id. Peel further claims that because he "couldn't hold it," he "eventually used the bathroom on [him]self." Id. In his original complaint, Peel attached several "witness statements" from fellow inmates, attesting to the fact that Turner ignored Peel's requests and that Peel soiled himself. See Dkt. # 1-1, at 9-15.

Turner, on the other hand, avers that Peel did not defecate on himself or alert her to a soiling. Rather, she claims that he "stormed down the stairs toward the officer station and demanded a grievance form." Dkt. # 38, at 4-5. According to Turner, Peel "stated something to the effect that he wasn't playing her little games, [and] that he had to go to the bathroom." Id. at 5. Turner then advised him that "she could not read his mind" and that if he needed to enter his cell, he had to tell her instead of just standing in front of the unit. Id. Turner gave Peel the requested grievance form and unlocked Peel's cell. Id. Turner also found that Peel had violated the jail's inmate handbook for filing a frivolous grievance and being disrespectful and rude to a staff member. Id. Consequently, she followed Peel to his cell and closed the door behind him. Id. Peel claims that Turner told him "you stink," Dkt. # 38-9, at 2, but Turner avers that she did not smell or see anything unusual about Peel's person. Dkt. # 38, at 5. Peel was restricted to his cell until the end of Turner's shift, approximately 4 - 4.5 hours, as punishment for his improper behavior. Id. Peel was not permitted access to the showers during this time and claims he "had to wash [him]self and [his] underwear in [his] sink, very unsanitary." Dkt. # 38-9, at 3. Turner maintains that Peel had a washcloth and an extra change of clean clothes in his cell. Dkt. # 38, at 7.

On February 2, 2007, Peel brought this civil action pursuant to 42 U.S.C. § 1983.[2] Dkt. # 1-1, at 1. Peel claims that he was humiliated by the incident and that fellow inmates laughed at him. Id. at 5. Peel seeks $2.4 million in damages and an apology. Id. at 2. Defendant now moves for summary judgment, claiming that no genuine issue of material facts exists.

---

[2] Peel filed suit against Turner and her supervisor, Captain Devoe. Dkt. # 1-1, at 1. In a previous Opinion and Order (Dkt. # 21), the Court dismissed with prejudice Peel's First and Fourteenth Amendment claims. Peel does not assert an Eighth Amendment claim against Captain Devoe, see Dkt. # 1-1, at 1-2, and thus this remaining claim is against Turner only.

3

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

Moreover, even if a plaintiff has failed to respond to a defendant's motion for summary judgment, the Court must still examine the record to determine if summary judgment is appropriate. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002) ("[A] party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party . . . ."). The Court, therefore, resolves any material factual disputes in plaintiff's favor.

### III.

Plaintiff claims that the conditions of his confinement – specifically, being denied immediate access to the toilet in his cell and a shower – violated his Eighth Amendment right to be free from cruel and unusual punishment. Conditions of confinement fall within the Eighth Amendment because they are part of the penalty that criminal offenders, such as plaintiff, pay for their offenses. See Whitley v. Albers, 475 U.S. 312, 318-19 (1986); Penrod, 94 F.3d at 1405. While prison officials have broad administrative and discretionary authority to manage prisons, Penrod, 94 F.3d at 1405, they must provide humane conditions based on "contemporary standards of decency." Estelle v. Gamble, 429 U.S. 97, 103 (1976). Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care. See Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Barney v. Pulsipher, 143 F.3d 12999, 1310 (10th Cir. 1998). However, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation marks omitted).

To hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met. First, the deprivation alleged must be "sufficiently

serious." Id. "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Second, the officials must have a "sufficiently culpable state of mind," meaning that the officials must exhibit "deliberate indifference" to a substantial risk of serious harm to the inmate. Id.

### A. "Sufficiently Serious" Conditions

The first requirement that the conditions complained of must be "sufficiently serious" to implicate constitutional rights is an objective inquiry. To satisfy this prong, plaintiff must show that conditions were "more than uncomfortable," DeSpain v. Uphoff, 264 F.3d 965, 973 (10th Cir. 2001), and rose to the level of "posing a substantial risk of serious harm" to plaintiff. Farmer, 511 U.S. at 834. The Eighth Amendment "does not mandate comfortable prisons"; the conditions imposed may be "restrictive and even harsh." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Court's analysis should not be based on "[its] idea of how best to operate a detention facility." Id. at 351. It should reflect a "balance between judicial respect for the exigencies of running a prison and the 'broad and idealistic concepts of dignity, civilized standards, humanity and decency' embodied in the Eighth Amendment." DeSpain, 264 F.3d at 973 (quoting Estelle, 429 U.S. at 102) (internal citations omitted).

In examining the conditions of confinement, the "'circumstances, nature and duration' of the challenged conditions must be carefully considered." DeSpain, 264 F. 3d at 974 (quoting Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000)). The seriousness of the alleged deprivation turns not only on the severity of the deprivation, but also on its duration. See also Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). Here, the jail's pilot program allowed inmates access to their cells once every half-hour, except during regular lockdown, head counts, disciplinary detentions, and meal

cleanups. Plaintiff contends that he was subject to cruel and unusual punishment because he did not have immediate access to a toilet and full shower. Plaintiff requested access to his cell around 10:10 a.m., ten minutes after he was last allowed entry. Dkt. # 38-9, at 1. Plaintiff claims that defendant would not open his cell, which caused him to defecate on himself. Id. Plaintiff was then restricted to his cell for approximately 4 - 4.5 hours, without access to the showers, as punishment for hostile behavior and what defendant believed to be a frivolous grievance. Dkt. # 38, at 5. Plaintiff claims he "had to wash [him]self and [his] underwear in [his] sink, very unsanitary." Dkt. # 38-9, at 3.

Even based on this view of the facts, however, the Court finds that, as an objective matter, such restricted bathroom and shower access did not rise to the level of a constitutional violation. Waiting to go to the bathroom for half an hour does not constitute a "deprivation[] denying the minimal civilized measure of life's necessities." Wilson, 501 U.S. at 298. The same holds true for plaintiff's inability to use a full shower facility for less than five hours. As noted by defendant, "[c]hildren in classrooms, persons traveling on our highways, [persons in nursing care facilities,] and persons in certain occupations and workplaces are not given access to toilets [or showers] for longer periods than [p]laintiff Peel's alleged one-time deprivation." Dkt. # 38, at 9. The Court finds that, as a matter of law, plaintiff's limited access to the toilet and the showers for a very limited period of time does not constitute cruel and unusual punishment. See DeSpain, 264 F.3d at 974 ("[T]here is 'no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment'") (quoting Johnson, 217 F.3d at 733)).

With regard to plaintiff's argument that he was exposed to his own human waste in violation of his Eighth Amendment rights, "exposure to human waste carries particular weight in the conditions calculus." DeSpain, 264 F.3d at 974; McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir.

7

2001) (finding "sufficiently serious" conditions where inmate was detained in feces-covered cell for three days); Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir. 1990) ("[C]ourts have been especially cautious about condoning conditions that include an inmate's proximity to human waste . . . ."); Michaud v. Sheriff of Essex County, 390 Mass. 523 (1983) (compiling cases showing "an intolerance for confinement which requires persons to live in close proximity to their own human waste and that of others."). "Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment." DeSpain, 264 F.3d at 974. Despite the Tenth Circuit and this Court's concerns regarding exposure to human waste, upon examining the circumstances of this case, the Court finds that plaintiff's Eighth Amendment rights were not violated. As noted above, plaintiff and the other inmates were afforded the opportunity to use restroom facilities two times each hour with limited exceptions. In fact, plaintiff was deprived of toilet access for a period of only ten minutes before he allegedly soiled his pants. Thus, even according to plaintiff's version of the facts, his exposure was neither significant nor lengthy. Once in his cell, plaintiff had access to a sink, in which "he had to wash [him]self and [his] underwear." Dkt. # 38-9, at 3. This case is far afield from the types of cases where exposure to human waste constituted an Eighth Amendment violation. See, e.g., DeSpain, 264 F.3d at 975 (finding that plaintiff met the objective prong of Farmer test where plaintiff was exposed for thirty-six hours to stench of sitting urine in his toilet and urine and feces in water near his cell and where officers rolled food cart through the urine-mixed water); Johnson v. Pelker, 891 F.2d 126, 139 (7th Cir. 1989) (holding that three days in cell with feces smeared on walls was not within "civilized standards, humanity, and decency").

In sum, the Court finds that, viewing the facts in the light most favorable to plaintiff, plaintiff has failed to establish a genuine issue of material fact that the prison conditions suffered by plaintiff were "sufficiently serious" to constitute Eighth Amendment violations.

### B.  Official Knowledge of Conditions

The second, subjective prong requires that prison officials show "deliberate indifference" to the existence of any risk inherent in exposure to the sufficiently serious challenged conditions. The Supreme Court explained,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  A prison official is liable only if the "official knows of and disregards an excessive risk to inmate health and safety." Id.  Under the second prong, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. Whether an official has the requisite knowledge and ignored the substantial risk to plaintiff is a question of fact. Id. "Because it is difficult, if not impossible, to prove another person's actual state of mind, whether an official had knowledge may be inferred from circumstantial evidence." DeSpain, 264 F.3d at 975.  Though it is not enough to establish that an official should have known of the risk of harm, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

Here, the Court finds that defendant could not have "know[n] of and disregard[ed] an excessive risk to inmate health and safety," id. at 837, because no excessive risk existed.  While the Court agrees with defendant that "[n]o reasonable person could be expected to anticipate that a

9

healthy adult male, who had just been granted access to the toilet ten minutes prior to his demand to enter his cell, could not hold his bowels for a few minutes[,]" Dkt. # 38, at 10, the Court does not rest its decision on this fact.[3] If a sufficiently serious condition does not exist, then as a matter of law, defendant's knowledge is inconsequential. See Despain, 264 F.3d at 975-977 (making an inquiry under the second prong only after finding that the flooding conditions posed a sufficiently serious health risk under the first prong); Barnes v. Wiley, 203 Fed. Appx. 939, 941 (10th Cir. 2006) (dismissing the inmate's appeal after concluding that the condition of "two [toilet] flushes per hour" was not sufficiently serious to satisfy the objective component of an Eighth Amendment violation) (unpublished decision).[4] Defendant could not possibly know of a sufficiently serious condition if there was no such threat to inmate health or safety. Thus, the Court finds that no genuine issue of material fact exists, and defendant is entitled to summary judgment.

---

[3] The Court also notes that plaintiff has not alleged any physical condition or ailment that would give notice to defendant or the other correctional officers that he was especially susceptible to uncontrollable bowel movements. Further, plaintiff had been incarcerated three times since implementation of the pilot program and had experienced no similar accident prior to the November 27, 2006 incident. Moreover, the fact that defendant permitted bathroom breaks on a schedule, albeit a schedule that did not conform to plaintiff's alleged needs, illustrates that defendant did not consciously deprive plaintiff of bathroom access or attempt to create an environment where plaintiff would be exposed to human waste for an extended period of time.

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

10

**IT IS THEREFORE ORDERED** that Defendant Detention Officer Turner's Motion for Summary Judgment (Dkt. # 38) is **granted**, and all pending motions are deemed **moot**. A separate judgment is entered herewith.

**DATED** this 27th day of December, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT